1
2
3
4
5
6                        UNITED STATES DISTRICT COURT

7                            DISTRICT OF NEVADA

8                                    * * *

9    CHRISTIAN BOURDEL,                    Case No. 2:12-cv-01213-MMD-CWH

10                          Plaintiff,
                                                         ORDER
11        v.
                                          (Def.'s Motion to Dismiss
12   WELLS FARGO ADVISORS, LLC and          – dkt. no. 14)
     KENNETH BOTT,
13
                          Defendants.
14

15   **I.    SUMMARY**

16        Before the Court is Defendant Wells Fargo Advisors, LLC's Motion to Dismiss.

17   (*See* dkt. no. 14.)  After reviewing the Complaint and the parties' briefings, the Court

18   grants in part and denies in part the Motion.

19   **II.   BACKGROUND**

20        Christian Bourdel, a resident of Las Vegas, Nevada, was approached in May

21   2003 by Defendant Kenneth Bott, a registered securities broker and employee of

22   Wachovia Corporation ("Wachovia"), to encourage him to invest in two different

23   companies, Win-Win Gaming and Pay By Touch.  Bott arranged multiple meetings with

24   Bourdel, and endorsed the investments in the two companies.  Bourdel made the first of

25   multiple purchases of Pay By Touch securities on June 6, 2003. Bott continued to

26   promote Pay By Touch stock and reassured Bourdel of the company's promise.

27        Pay By Touch subsequently declared bankruptcy in late 2008, and Bourdel was

28   left with nothing. A lawsuit was brought by Pay By Touch investors against UBS

1  Securities, LLC for the firm's role in selling Pay By Touch securities.  That suit settled in

2  November 2011.  Around the time of that settlement, Bourdel obtained a document that

3  implicated Bott in a scheme whereby Pay By Touch would pay commissions to certain

4  "finders."  The document listed Bott as having received by far the largest commissions

5  for his role in finding investors.

6        Bourdel filed this action on July 10, 2012, alleging violations of the Securities

7  Exchange Act § 20(a), 15 U.S.C. § 78t(a), Securities and Exchange Commission Rule

8  10b-5, 17 C.F.R. § 240.10b-5, and negligence against Bott and Wells Fargo Advisors,

9  LLC ("Wells Fargo"), the successor of Wachovia.  Wells Fargo subsequently moved to

10  dismiss the action, arguing that the claims are time-barred.

11  **III.    LEGAL STANDARD**

12        A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

13  relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide

14  "a short and plain statement of the claim showing that the pleader is entitled to relief."

15  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While

16  Rule 8 does not require detailed factual allegations, it demands more than "labels and

17  conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v.*

18  *Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

19  "Factual allegations must be enough to rise above the speculative level."  *Twombly*, 550

20  U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient

21  factual matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at

22  678 (internal citation omitted).

23        In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

24  apply when considering motions to dismiss.  First, a district court must accept as true all

25  well-pled factual allegations in the complaint; however, legal conclusions are not entitled

26  to the assumption of truth.  *Id.* at 679.  Mere recitals of the elements of a cause of action,

27  supported only by conclusory statements, do not suffice.  *Id.* at 678.  Second, a district

28  court must consider whether the factual allegations in the complaint allege a plausible

2

1   claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint
2   alleges facts that allow a court to draw a reasonable inference that the defendant is
3   liable for the alleged misconduct.  *Id.* at 678.  Where the complaint does not permit the
4   court to infer more than the mere possibility of misconduct, the complaint has "alleged–
5   but not shown–that the pleader is entitled to relief."  *Id.* at 679 (internal quotation marks
6   omitted).  When the claims in a complaint have not crossed the line from conceivable to
7   plausible, the complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

8        A complaint must contain either direct or inferential allegations concerning "all the
9   material elements necessary to sustain recovery under *some* viable legal theory."
10  *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,
11  1106 (7th Cir. 1989) (emphasis in original)).

12  **IV.    DISCUSSION**

13       **A.    Federal Claims**

14       Wells Fargo first argues that Bourdel's federal securities fraud claims are
15  time-barred.  Any action under the Securities Exchange Act or Rule 10b-5 must be
16  brought within 2 years after the discovery of facts constituting a violation, or 5 years after
17  such a violation, whichever is earlier.  *See* 28 U.S.C. § 1658(b).

18       The Complaint alleges that Bott approached Bourdel in May 2003 about investing
19  in Pay By Touch and Win-Win Gaming, and Bourdel purchased Pay By Touch securities
20  on June 6, 2003. Bott allegedly continued to promote Pay By Touch and Win-Win
21  Gaming securities for two years, and subsequently left Wachovia in August 2005. The
22  Complaint was filed on July 10, 2012, approximately nine years after Bourdel's first
23  purchase and seven years after Bott ceased promoting the questionable investments.

24       Bourdel argues that the applicable statute of limitations runs not from the date of
25  the first transaction, or even the date at which Bott stopped marketing the troubled
26  securities, but from November 2011, the date that Bourdel discovered the document that
27  detailed Bott's remuneration for selling Pay by Touch securities.  Bourdel argues that the
28  November 2011 discovery revealed Bott's state of mind relative to a securities fraud

1  claim — an essential element that must be pled with particularity in the Complaint.

2  Although Bourdel had investigated the propriety of Bott's conduct as early as June 2009,

3  Wachovia's then-denial of misconduct led Bourdel to believe that an essential element of

4  a securities fraud action could not be established.  Bourdel also argues that the five year

5  period that runs from the date of the violation must be tolled, lest firms like Wells Fargo

6  be rewarded for concealing evidence of improper conduct.

7        Regardless of when Bourdel discovered Bott's alleged fraudulent activity, his

8  claim must be brought within five years after any violation.  As recounted above, the

9  statute of limitations on a federal securities fraud claim bars an action brought not later

10 than the *earlier* of either two years after discovery of a violation or five years after such a

11 violation.  *See* 28 U.S.C. § 1658(b).   Here, the earlier date is five years after the

12 violation, since any fraudulent activity must have occurred before Bott's August 2005

13 departure.  While this may impose a harsh penalty on a potential plaintiff, courts have

14 recognized that the five year statute of repose bars recovery even before the plaintiff

15 suffers an injury, let alone before the plaintiff discovers the facts necessary to bring a

16 claim. *See In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199 (3d Cir. 2007); *Balam-*

17 *Chuc v. Mukasey*, 547 F.3d 1044, 1049 (9th Cir. 2008) ("A statute of repose cuts off a

18 cause of action at a certain time irrespective of the time of accrual of the cause of

19 action."); *see Nesladek v. Ford Motor Co.*, 46 F.3d 734, 737 n. 3 (8th Cir.1995) ("A

20 statute of repose is different from a statute of limitations . . . because a tort limitations

21 statute does not begin to run until the injury, death, or damage occurs — or until the

22 cause of action accrues. On the other hand, a statute of repose prevents the cause of

23 action from accruing in the first place.").  Thus, regardless of when Bourdel discovered

24 Bott's violation, subsection (b)(2) bars Bourdel's securities fraud claims.

25        Further, equitable tolling cannot extend the five year statute of repose.  The very

26 purpose of a statute of repose, as opposed to a statute of limitations, "is to set an outer

27 limit unaffected by what the plaintiff knows."  *See McCann v. Hy-Vee, Inc.*, 663 F.3d 926,

28 930 (11th Cir. 2011) (*quoting Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th

1    Cir. 1990)).  As a result, "[s]tatutes of repose are not subject to equitable tolling."  *Munoz*

2    *v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003) (*citing Lampf, Pleva, Lipkind, Prupis &*

3    *Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)).  Bourdel's securities fraud claims are

4    thus dismissed with prejudice.

5            **B.    Negligence Claim**

6            Under Nevada law, a negligence claim must be brought within two years of its

7    accrual.  NRS § 11.190(4)(e).  "The general rule concerning statutes of limitation is that a

8    cause of action accrues when the wrong occurs and a party sustains injuries for which

9    relief could be sought." *Petersen v. Bruen,* 792 P.2d 18, 24-25 (Nev. 1990). The

10   exception to this rule is what is deemed as the "discovery rule," where "the statutory

11   period of limitations is tolled until the injured party discovers or reasonably should have

12   discovered facts supporting a cause of action."  *Id.*  Determination of when a cause of

13   action accrued is ordinarily a question of fact for the trier of fact.  *In re Amerco Derivative*

14   *Litig.*, 252 P.3d 681, 703 (Nev. 2011).

15          Wells Fargo argues that Bourdel's negligence cause of action is time-barred,

16   since Bourdel's failure to be reasonably diligent at the time of his investments prevents

17   him from asserting a stale negligence action.  Wells Fargo's position is that the riskiness

18   of Bourdel's investments was "certainly discoverable with very little diligence by 2008"

19   such that his action was time-barred by 2010.  (*See* dkt. no. 14 at 7.)  As questions of

20   fact exist as to when this cause of action accrued, Wells Fargo's request to dismiss

21   Bourdel's negligence claim is denied.

22          After investing in Pay By Touch, Bourdel alleges that he travelled to the

23   company's corporate offices in San Francisco on May 12, 2004, to hear a presentation

24   for potential investors.  "Years of hype by Defendant Bott and [Pay By Touch] company

25   executives" followed, but culminated in the company's 2008 bankruptcy.  (Compl., dkt.

26   no. 1 at ¶ 26.)  According to a letter written by Wells Fargo, Bourdel informed Wells

27   Fargo in June 2009 of his charge that Bott engaged in fraudulent activity as Bourdel's

28   ///

1  financial advisor.  (*See* dkt. no. 18-1.)[1]  The letter details Bourdel's allegation that Bott

2  "engaged in an activity known as 'selling away.'"  (*See id.* at 1.)  Though Bourdel may

3  not have known of the particulars of Bott's alleged scheme — they were revealed in

4  documents obtained in November 2011 — Bourdel possessed enough information to

5  lodge a complaint with Wells Fargo concerning Bott's "selling away."[2]  It is not clear,

6  however, what facts Bourdel knew when the letter was written, or whether his discovery

7  of improper conduct was objectively reasonable based on the information available to

8  him at the time.

9         Indeed, even if Bourdel exercised reasonable diligence in 2009 in pursuing his

10  claims against Wells Fargo, Wells Fargo's denial of his accusations raises questions of

11  fact as to whether the statute of limitations tolled.  Wrongfully denying or withholding

12  facts that would support a negligence claim falls squarely within the type of inequitable

13  conduct that would toll a statute of limitations.  *See Santa Maria v. Pac. Bell*, 202 F.3d

14  1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. I.N.S.*,

15  272 F.3d 1176, 1194-96 (9th Cir. 2001) (en banc) (noting that equitable tolling applies in

16  cases where, "despite all due diligence, a plaintiff is unable to obtain vital information

17  bearing on the existence of his claim.").  Put differently, the inquiry into the availability of

18  equitable tolling asks "whether there was excusable delay by the plaintiff: If a reasonable

19  plaintiff would not have known of the existence of a possible claim within the limitations

20  period, then equitable tolling will serve to extend the statute of limitations for filing suit

---

22         [1]The parties do not dispute the authenticity of this letter, or of its contents.  The Court therefore considers the document in connection with its ruling.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

24         [2]"Selling away" describes the prohibited practice of a financial or investment advisor's selling of investment products without the authorization of the firm with which she is licensed.  *See McGraw v. Wachovia Sec., L.L.C.*, 756 F. Supp. 2d 1053, 1074 (N.D. Iowa 2010) ("Private securities transactions" (sometimes called "selling away") are any securities transactions outside the regular course or scope of a representative's employment with a brokerage firm."); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 922 (6th Cir. 2007) (defining "selling away" as "selling securities not approved or authorized by the firm").

1    until the plaintiff can gather what information he needs." *Johnson v. Henderson,* 314

2    F.3d 409, 414 (9th Cir. 2002) (internal quotation marks omitted); *cf. Copeland v. Desert*

3    *Inn Hotel*, 673 P.2d 490, 492 (1983) (factors in equitable tolling analysis in E.E.O.C. anti-

4    discrimination context include whether the claimant relied on misleading statements by

5    the administrative agency and whether the claimant's employer made deceptive or

6    fraudulent assurances in response to claimant).  Bourdel argues that Wells Fargo's

7    denial of Bott's misconduct either falsely assured him that no fraud claim existed, or

8    affirmatively deceived him into believing that no facts existed to support a negligence

9    cause of action.  Discovering further evidence of misconduct in November 2011 might

10   directly contradicts Wells Fargo's statements in the letter, thereby raising facts

11   necessary to establish a negligence action.  As a result, the Court cannot resolve these

12   factual questions, and must, as is general practice, allow the case to proceed to

13   discovery.  *See, e.g.*, *Havas v. Engebregson*, 633 P.2d 682, 684 (Nev. 1981).

14   **V.    CONCLUSION**

15       Although Bourdel's securities fraud claims against Bott and Wells Fargo are

16   barred by the applicable statute of repose, questions of fact preclude dismissing as

17   time-barred his negligence claims.

18       Accordingly, Wells Fargo's Motion to Dismiss (dkt. no. 14) is GRANTED in part

19   and DENIED in part.

20       As the federal claims supporting this Court's subject matter jurisdiction are now

21   dismissed, the parties have fourteen (14) days from entry of this Order to show cause as

22   to why the Court should not decline to exercise supplemental jurisdiction and remand to

23   state court.

24       DATED THIS 30th day of April 2013.

25

26

27       MIRANDA M. DU
         UNITED STATES DISTRICT JUDGE

28